**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**CINDIA HUDSON**                                                                                          **PLAINTIFF**

**V.                                      CASE NO. 4:12CV00126 BD**

**MICHAEL J. ASTRUE, Commissioner,
Social Security Administration**                                                                **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cindia Hudson appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act.[1]  For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.       Background**

On May 13, 2008, Ms. Hudson protectively filed for DIB and SSI.  In both applications, she alleged disability beginning on April 27, 2004, due to high blood pressure, bipolar disorder, bone pain, and difficulty standing.  (Tr. 145, 149, 176)  Ms. Hudson's claims were denied initially and upon reconsideration.  At her request, an Administrative Law Judge[2] ("ALJ") held a hearing on April 7, 2011, at which Ms.

---

[1] The parties consented to the jurisdiction of the Magistrate Judge.  (#13)

[2] The Honorable David J. Manley.

Hudson appeared with her attorney. (Tr. 20) At the hearing, the ALJ heard testimony from Ms. Hudson and a vocational expert ("VE"). (Tr. 20-57)

The ALJ issued a decision on June 14, 2011, finding that Ms. Hudson was not disabled under the Act. (Tr. 8-19) The Appeals Council denied Ms. Hudson's request for review on January 20, 2012, making the ALJ's decision the Commissioner's final decision. (Tr. 1-4)

Ms. Hudson was forty-nine years old at the time of the hearing. (Tr. 25) She had an eighth-grade education. (Tr. 25) She was 5'5" and weighed 258 pounds. (Tr. 29, 175) She had past relevant work as personal care aide. (Tr. 52)

## II.     Decision of the Administrative Law Judge

The ALJ followed the required sequential analysis and found that Ms. Hudson had not engaged in substantial gainful activity since her alleged disability onset date (Tr. 10-11) and that she had the following severe impairments: bipolar disorder, obsessive-compulsive disorder, and borderline traits. (Tr. 11) The ALJ also found, however, that Ms. Hudson did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 11-12)

The ALJ determined that Ms. Hudson had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with nonexertional limitations to work where interpersonal contact would be incidental to the work performed; complexity

of tasks would be learned and performed by rote, would involve few variables, and would require little independent judgment; and the supervision required would be simple, direct, and concrete. (Tr. 13-17)

The ALJ determined that Ms. Hudson's RFC would not allow her to perform any of her past relevant work. (Tr. 17-18) But after considering Ms. Hudson's RFC, age, education, work experience, and VE testimony, the ALJ determined that Ms. Hudson could perform the jobs of laundry worker, presser, and poultry eviscerator, all of which existed in significant numbers in the national economy. (Tr. 18) Accordingly, the ALJ found that Ms. Hudson was not disabled under the Act. (Tr. 19)

**III.    Analysis**

    A.    *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is something less than the greater weight of evidence, but it must be "sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but,

the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

B.     *Plaintiff's Arguments for Reversal*

Ms. Hudson claims that the ALJ's decision was not supported by substantial evidence because: (1) he did not evaluate the severity of Ms. Hudson's mental impairments under the Impairment Listings; and (2) he erred in finding that Ms. Hudson retained the RFC to perform light work. (#11)

C.     *Impairment Listing*

Ms. Hudson argues that the ALJ failed to evaluate her mental impairments under Impairment Listing 12.04, 12.06, and 12.08, 20 C.F.R. Part 404, Subpart P, Appendix 1. (# 11, p. 9-16)  The ALJ, however, specifically noted listings 12.04, 12.06, and 12.08, but found that Ms. Hudson did not meet the "paragraph B" criteria for any of the Listings. (Tr. 11-12)

A claimant has the burden of proving that an impairment or combination of impairments meets or equals a Listing.  *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).  "To meet a listing, an impairment must meet all of the listing's specified criteria."  *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) (citing references omitted).

To meet the "paragraph B" criteria for listing 12.04, 12.06, or 12.08, Ms. Hudson had to prove at least two of the following: (1) marked restriction of activities of daily

living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of an extended duration.  20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04(B), 12.06(B), and 12.08(B).

A psychiatric review technique performed by state agency physicians noted moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace.  (Tr. 397)  No marked limitations were noted.  No episodes of decompensation of extended duration were noted.  (Tr. 397)  Ms. Hudson, for her part, did not cite a single instance of decompensation that could be found in the record.  (#11)

A mental residual functional capacity assessment performed by state agency physicians also found no more than moderate limitations in any area of understanding and memory, sustained concentration and persistence, social interaction, or adaptation.  (Tr. 401-402)

A consultative physician, Janet E. L'Abbe, Ph.D., performed a mental evaluation on January 29, 2009.  (Tr. 376-383)  Ms. Hudson was not taking any psychiatric medication for mental impairments at that time.  (Tr. 377)  Dr. L'Abbe found that Ms. Hudson had some difficulty in day-to-day functioning.  (Tr. 382)  But she could communicate without difficulty and react in a socially adequate manner.  (Tr. 382)  Ms.

Hudson had the cognitive ability to cope with basic work-like tasks. (Tr. 382) Ms. Hudson could likely attend to and sustain concentration on basic work tasks. (Tr. 382)

Ms. Hudson noted a report from J. Stephan Holt, Ph.D., to support her argument that she had marked restriction of activities of daily living. Dr. Holt, however, noted only mild obsessive-compulsive disorder, in partial remission. (Tr. 341) That is hardly evidence of marked restriction. Dr. Holt noted that Ms. Hudson responded positively to medication and was able to do what was necessary. (Tr. 340) He also noted that Ms. Hudson demonstrated an ability to be a caregiver for elderly people. (Tr. 341) Dr. Holt found that unless Ms. Hudson's symptoms worsened, her disorder did "not appear a significant limitation to the employment process." (Tr. 342)

Ms. Hudson did not meet her burden of proving she met an Impairment Listing. The ALJ's step-three determination was supported by substantial evidence in the record.

  D. *Residual Functional Capacity*

The ALJ bears the primary responsibility for assessing a claimant's RFC. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010). It is the claimant's burden, however, to prove RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003).

Ms. Hudson argues that the ALJ erred in finding that she retained the RFC to perform light work. (#11, at p. 16-18) Specifically, she claims that she could not stand and walk for periods that would be required to perform light work.

The ALJ found that Ms. Hudson could perform work at all exertional levels. (Tr. 13) With the use of VE testimony, the ALJ found that Ms. Hudson could perform three jobs, all of which are generally performed at the light level of exertion.[3]

The ALJ found that there was no evidence that Ms. Hudson suffered a physical impairment that would impose more than slight limitations in basic work activities. (Tr. 11) Interestingly, Ms. Hudson does not specifically challenge the lack of a physical severe-impairment finding. Instead, she claims she could not physically stand and walk due to spine and knee problems. (#11, at p. 16-17)

At the time of Ms. Hudson's disability filing, a full four years after her alleged disability onset date, she did not allege any illness, injuries, or conditions related to her spine or feet that would limit her ability to work. (Tr. 176) "[N]o acute findings were noted" in X-rays of Ms. Hudson's spine and left knee. (Tr. 265) There was no evidence of deep venous thrombosis. (Tr. 265) A physician recommended frequent stretching exercises for Ms. Hudson's back. (Tr. 265) Regarding her knee, the physician recommended an increase in oral calcium intake and "perhaps an elastic knee brace as well." (Tr. 265)

Ms. Hudson's left knee was "grossly normal with no fractures or dislocations." (Tr. 277) Her spine was also "grossly normal." (Tr. 277) A physical examination on

---

[3] Ms. Hudson's counsel failed to ask the VE a single question about the standing and walking requirements of the listed jobs during the hearing. (Tr. 55-56)

March 27, 2008, was essentially normal. (Tr. 370) Back exercises were recommended, while diet modification and exercise were discussed. (Tr. 370)

Ms. Hudson notes that a 2004 rehabilitation services medical work evaluation found a "problem" in Ms. Hudson's ability to stand for eight hours. (Tr. 337) The same evaluation, however, noted "no problem" in Ms. Hudson's ability to stand and walk. (Tr. 337)

At the time of the administrative hearing, Ms. Hudson was successfully performing work at the medium level of exertion. (Tr. 52) Based on the mental limitations found by the ALJ, the VE testified that Ms. Hudson could not perform the job she was performing. (Tr. 53-54)

Substantial evidence in the record supports the ALJ's physical RFC determination. Ms. Hudson failed to meet her burden of proving a severe physical impairment. She has not shown that she lacked the RFC to stand or walk for six hours in an eight-hour workday, if required.

IV.  **Conclusion**

The Court has reviewed all of the evidence in the record, including the medical evidence, physician assessments, and the hearing transcript. There is sufficient evidence in the record as a whole to support the Commissioner's determination that Cindia Hudson retained the residual functional capacity to perform jobs existing in significant numbers in the economy.

Accordingly, this appeal is DENIED, and the Clerk of Court is directed to close the case, this 20th day of February, 2013.

```
_____
UNITED STATES MAGISTRATE JUDGE
```